EVALYN ALLEN, Appellant, v. NORTH DES MOINES METHO-
    DIST EPISCOPAL CHURCH, and E. D. SAMSON, J. F.
    KENNEDY, G. A. MILLER, G. G. HUNTER, W. H. PENN,
    A. D. STRUTHERS, W. L. SMITH, Trustees, Appellees.

**Religious corporations:** DISSOLUTION AND ORGANIZATION OF NEW
1 BODY: FRAUD. The members of an insolvent and dormant
   church corporation may incorporate a new organization for the
   promotion of the same objects without incurring liability for
   the debts of the original corporation, provided they act with
   a good faith intention of creating a new and independent
   organization. Evidence reviewed and held insufficient to show
   fraud.

**Corporate liability.** Where a newly organized and independent
2 corporation takes over property of its insolvent predecessor, it

is not, ordinarily, liable as a debtor to the creditors of the latter, but is liable to account for such assets as a trustee.

**Liability of member for church debt.** A creditor of a church organization is not a creditor of its individual members, and has no right of action against them as such.

**Amendment.** Permission to amend a petition after the introduction of evidence setting up a new and distinct cause of action, is discretionary with the trial court, and its order will not usually constitute reversible error.

*Appeal from Polk District Court.*—Hon. JAMES A. HOWE, Judge.

FRIDAY, MARCH 10, 1905.

SUIT in equity to subject certain real estate to the lien of a judgment obtained by plaintiff against the Prospect Park Methodist Episcopal Church. Decree dismissing bill, and plaintiff appeals.—*Affirmed.*

*Wm. M. Wilcoxen* and *Bowen & Brockett,* for appellant.

*E. D. Samson, S. F. Prouty* and *W. L. Smith,* for appellees.

WEAVER, J.—Briefly stated, the plaintiff claims that in the year 1887 the defendant was incorporated for religious purposes under the laws of this State, and assumed the name of Prospect Park Methodist Episcopal Church, and that thereafter, by proper proceedings, the name of the corporation was changed to North Des Moines Methodist Episcopal Church. It is further alleged that prior to the beginning of this action plaintiff obtained a judgment against the corporation in the district court of Polk county, Iowa, under the name of Prospect Park Methodist Episcopal Church, which judgment is still unpaid, and that since the change in the name of the organization it has become the owner of certain real estate upon which the plaintiff asks to have

the lien of such judgment established and confirmed. By a second count of her petition the plaintiff alleges that the present church organization is identical with the one against which she obtained judgment, and that the change in its name and designation was a fraudulent scheme or device to hinder and delay its creditors. The defendants admit that the North Des Moines Methodist Episcopal Church is a corporation, and owns the real estate above referred to, but deny that said corporation is identical with the Prospect Park Methodist Episcopal Church, or is in any way responsible for the debts of such church. They deny all allegations of fraud. It is also alleged that the organization known as the Prospect Park Church became indebted beyond its ability to pay, and its church property, which is the property now owned by the defendants, was sold under foreclosure of mortgage, and the title wholly lost; that in such condition it was impossible to obtain contributions for the support of the society, or to purchase or erect a new building, and the corporation and society were disbanded. Under these circumstances it is said the North Des Moines Methodist Episcopal Church was organized, and an incorporation effected as a new and independent body having no connection with or responsibility for the debts of the old organization.

From this outline of the issues it will be readily seen that the one question to be considered is whether the reorganized North Des Moines Church is a mere continuation of the old corporation under a new name, or is a new corporation, which is under no legal liability for the debts of its predecessor. That the members or some of the members of an insolvent or dormant corporation may organize a new corporation for the promotion of the same purposes to which the old one is dedicated without becoming chargeable with its debts or obligations is too well settled for dispute. On the other hand, it is equally well settled that the mere change in the name of a

1. RELIGIOUS CORPORATIONS: dissolution and organization of new body; fraud.

corporation has no effect upon its legal status or upon the rights of creditors. Among corporations organized for business purposes it has been, and still is, a matter of most frequent occurrence that in the initial struggle for existence they become hopelessly insolvent. Under such circumstances the organization of a new corporation to build, if possible, a successful business on the ruins of the old is entirely legitimate, whether considered as a proposition of law or of morals. The fact that the new organization embraces the old membership is immaterial, and in itself affords no reason why it should be held liable for the debts of the old corporation. True, the courts will watch such reorganization with care, that no fraud be accomplished, and to that end will insist that there shall be a *bona fide* intention to make a new and independent organization, and that it shall not take over, absorb, or convert to its use the property or assets of the old corporation to the prejudice of its creditors. There must be something more than a mere succession in business to charge the successor with the debts or delinquencies of the party succeeded. *Hopper v. Moore,* 42 Iowa, 563; *Wyman v. Bank,* 14 Mass. 58 (7 Am. Dec. 194); *National F. and P. Works v. Water Co.,* 105 Wis. 48 (81 N. W. Rep. 125); *Memphis v. Magens,* 83 Tenn. 37; *Texas State Fair v. Caruthers,* 8 Tex. Civ. App. 474 (29 S. W. Rep. 48). The legal identity of the new corporation with the old ordinarily depends upon the intention of the incorporators. 1 Thompson's Corporations, 256; *Miller v. English,* 21 N. J. Law, 317; *Church v. Brownell,* 5 Hun, 464; 2 Morawetz Private Corporations, section 812.

There can be no doubt in the present case that the incorporators of the North Des Moines Church intended to create a new and independent organization, which should not be chargeable with the debts of the Prospect Park Church. Their legal right to perfect such an organization is also clear. If, then, their organization was in regular statutory form, and no fraud was practiced upon the plain-

tiff as a creditor of the old corporation, the conclusion of the trial court must be upheld as correct. No question has been raised as to the formal or statutory sufficiency of the methods pursued, and we shall therefore confine our inquiry to the question of fraud. The Prospect Park Church was organized and incorporated in the year 1887, and obtained title to the tract of land mentioned in the pleadings. Encouraged by persons interested in the values of residence property in that neighborhood, and relying upon subscriptions and promises which eventually proved valueless, it erected a church building out of proportion to its financial ability, and incurred expenses beyond its power to meet. The property was heavily mortgaged, and this burden, with others incident to the mismanagement or misfortune attending the first years of the society's existence, proved too great to be removed or successfully carried. In the year 1899 the mortgage was foreclosed for something more than $5,000, and, the property having been sold, and not redeemed, the purchaser took a sheriff's deed. The record discloses no fact or circumstance indicating that the foreclosure was a collusive transaction, or that the corporation had any agreement, express or implied, with the mortgagee, for the repurchase of the property. The loss of the title left the society wholly without assets. Corporations of this character issue no stock, and are wholly without power or authority to levy assessments upon or enforce contributions from their members.

As is quite sure to be the case in organizations which depend solely upon voluntary good-will offerings for income and support, an excessive indebtedness proved an insurmountable obstacle to prosperity and growth. At the end of some thirteen years' effort, the society found itself without a church building, and without means or ability to obtain another, or to pay its outstanding obligations. Its assets had been wholly eliminated. It had neither property, money, nor franchises which creditors could subject to their claims. There is nothing to indicate that its members had

not contributed to the full extent of their ability and duty under the circumstances. Its corporate organization even had ceased to be available for the society's future needs, because the existence of its indebtedness and the discredit attaching to its failures in the past were quite sure to paralyze every effort to enlist the help, support, and sympathy which were essential to success.

Under this stress it was determined to disband the old organization, and from its membership, with such others as could be induced to co-operate, endeavor to create a new one. This was done. The new organization 2. CORPORATE LIABILITY. was made up largely from the old members, but with a new list of officials, and incorporated as the North Des Moines Methodist Episcopal Church. The owner of the church property under the sheriff's deed, finding it no doubt an undesirable and profitless asset, consented to sell it for less than one-half the mortgage debt for which it had been sold, and the new corporation purchased it, and now holds the title. It is against this property which the plaintiff now seeks to enforce her judgment. In none of the circumstances of the case do we discover anything on which a charge of fraud may be justly predicated. It is true, we have said the new church is principally made up from the membership of the old; that it is affiliated with the same conference, acknowledges the same ecclesiastical authority, professes the same faith, occupies the same locality, and pursues the same general policy; but these do not constitute corporate identity. Had the North Des Moines Church taken over any property or valuable thing which the plaintiff was entitled in law or equity to subject to her claim, a different question would arise. But even then her remedy would be confined to a subjection of such property to the payment of her judgment. In other words, the new corporation would not ordinarily be chargeable as her debtor, but as a trustee, liable to account for such assets of the old corporation as it may have received. 2 Morawetz on Private Corporations, sec-

tion 811; *Marshall v. R. R. Co.,* 92 N. C. 322; *Bruffett v. R. R. Co.,* 25 Ill. 353; *Donnelly v. Hearndon,* 41 W. Va. 519 (23 S. E. Rep. 646); Thompson's Corporations, section 263.

Plaintiff is not the creditor of the members. She has not, and never has had, a right of action against them as such. The only duty owed to her by the individual members was the moral duty to use all reasonable effort by their own contributions, and by such assistance as might properly be obtained from others, to maintain the solvency of the corporation. There is nothing before us to show that this full measure of duty was not performed, while the proved fact that the church struggled with its difficulties for so many years before surrendering to the inevitable affords some presumption that its members were not unmindful of their obligations.

3. LIABILITY OF MEMBERS FOR CHURCH DEBT.

It is suggested in argument that some few articles of furniture and miscellaneous supplies belonging to the old church went into the possession of the appellee. It is true the evidence indicates that a portable organ, which was placed in the church before the foreclosure, has remained there, and that the pastor makes use of the original membership roll. As to the first item, we only can say that, if such property was liable to seizure and sale upon the plaintiff's judgment, it may still be reached in the hands of the appellee; but no such relief is sought in this proceeding. Of the other matter, it may be said that the pastor is not an officer of the corporation, and it is not bound by his act in the premises. Moreover, it appears that under the rules and regulations of the church a formal dismissal of its members from the old organization and reception into the new one were not essential to a transfer of membership, and under such circumstances the retention and use of the roster is without special significance.

Counsel argue with much earnestness that the new corporation, being devoted to the same purposes and to the same

faith as the first one, should be held to be the same legal
entity under another name, and bound by law as well as by
the principles of common honesty to pay the debts of its
predecessor. They further say that, " if a new organiza-
tion had been effected for the purpose of maintaining the
doctrines of the Baptist or any other church, and the mem-
bership had allied themselves with it, we should have an
entirely different proposition." If in fact, the membership
were legally or morally bound to the plaintiff for the pay-
ment of this debt, it is not easy to understand just how a
change of denominational lines or a merger into the " Bap-
tist or any other church " would serve to cancel the obliga-
tion. Men and women cannot rid themselves of a debt in
law or in honor by a change of church relations. Were we
to announce otherwise, the tide of interchurch migration
might soon reach embarrassing proportions. But the truth
is that no such obligation as counsel contends for exists. As
already suggested, the member of the church is never under
any legal obligation for the payment of its corporate
debts, and his only moral obligation is to contribute of
his means and of his influence to the extent of his ability
to meet the just demands upon that organization so long
as he is a member of it. When he has done all which
his own enlightened conscience indicates to be his duty, or
when, for any reason which satisfies himself, he ceases to
be a member and refuses further assistance, neither court,
creditor, nor counsel is entitled to arraign him as a recreant.
He who gives credit to a church organization knows that
the only source to which he is entitled to look for payment
is the property or assets of which the corporation is owner,
and to the voluntary offerings or gifts of the members and
friends who may be moved or persuaded to contribute to that
purpose. If the people, for any reason, will not contribute
to meet his demand, but will help build up another organiza-
tion, he suffers no legal wrong. In this instance the church
property had been lost. The membership was under no

obligation to purchase it simply to see it sold on the plaintiff's judgment. They could have abandoned all further effort to maintain a church organization of any kind without incurring any liability or exposing themselves to any just demand on part of plaintiff — a result which doubtless would have followed if the organization of a new church, liable for no obligations except those of its own making, were not allowable.

In short, our conclusion is that the intent to form a new corporation is clearly shown, that in carrying such intent into execution no fraud was committed and that plaintiff's bill was therefore properly dismissed.

After the introduction of evidence in the court below, the plaintiff asked for and was refused leave to file an amendment to her petition seeking relief on the ground that the old corporation was a mere trustee for the benefit of the membership, and that the new corporation was but the successor in the same trust. Counsel have argued this proposition, but we think the issues are not broad enough to cover it, nor does it seem to have been tried or passed upon by the district court. The granting of leave to amend at that stage of the case, setting up a new and distinct issue, was addressed to the discretion of the court, and the refusal of the request is not an error requiring a reversal.

4. AMENDMENTS.

The conclusion of the district court upon the merits is right, and is *affirmed*.